## Barclay *v.* Pittsburg Home Building Company.

*Receivers—Sale—Corporations—Setting aside sale—Act of May 11, 1911, P. L. 261.*

1. Where the receiver of an insolvent corporation has under an order of court sold real estate without fraud and for an adequate price at private sale, free and clear of liens, and the sale has been confirmed and the deed delivered to the purchasers, the court will not, five months thereafter, and after valuable improvements have been made by the purchaser, set aside the sale and order resale, at the instance of lien creditors, because no notice had been given to the known lien creditors by the receiver, of his intention to present a petition for sale, as provided by the Act of May 11, 1911, P. L. 261.

2. In such a case the fact. that the petitioners for a resale offer to bid a sum in excess of the price received at the private sale, is immaterial, if it appears that the advance did not equal the sum expended by innocent purchasers for improvements.

Argued April 30, 1914. Appeal, No. 87, April T., 1914, by Andrew Mason, John F. Provan and J. W. Warrick, from order of C. P. Allegheny Co., Nov. T., 1910, No. 583, refusing to set aside receiver's sale in case of C. W. Barclay v. Pittsburg Home Building Company. Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Petition to set aside receiver's sale of real estate.

The petition averred that the petitioners were creditors of the Pittsburg Home Building Company. That on October 31, 1910, the South Side Trust Company was appointed receiver of the building company; that on April 22, 1912, the receiver presented a petition

asking leave to sell the real estate and the court made an order of sale providing for advertising in two newspapers and the Pittsburg Legal Journal for twenty days and by handbills and personal notice to creditors; sale to be free and clear of liens; that receiver advertised for public sale to be held May 22, 1912, that sale was adjourned from time to time; that the receiver petitioned to sell at private sale and on August 9, 1912, receiver filed return of private sale to Jacob Gold for $4,500 free and clear of liens, which sale was confirmed nisi on that date and absolutely on September 13, 1912. That no personal notice was given petitioners of any sale and that no notice of any kind was given petitioners or other creditors of private sale and that the price was inadequate. Petitioners prayed for rescission of order of sale and asked that the property be again put up at public sale.

Answers were filed by the receiver, by Jacob Gold and by Mary Mueller denying the averments of the petition and averring adequacy of price and notice to petitioners and that Mary Mueller was a bona fide purchaser for value and that improvements had been made on the property.

At the argument the petitioners presented a stipulation agreeing to bid $5,600 if the property should be offered again.

The evidence showed that the improvements placed upon the property by the purchasers were in excess of the advance on the original bid.

The court made an order refusing to set aside the sale.

*Error assigned* was the order of the court.

W. K. *Jennings*, of *Jennings & Jennings*, for appellant.

No printed brief for appellee.

OPINION BY TREXLER, J., October 12, 1914:

The statement of the question involved is as follows:
A receiver of an insolvent corporation having presented

to a court of equity a petition for leave to sell real estate at private sale free and clear of liens, and the sale having been confirmed and the deed delivered to the purchaser, should the court, on the petition of lien creditors, set aside the sale and order a resale, for the reason that no notice was given to certain known creditors by the receiver of its intention to present such petition as provided by the Act of May 11, 1911, P. L. 261?

The act reads as follows: "That from and after the passage of this act, the courts of common pleas of the several counties of this commonwealth in all cases where, under existing laws, the court has power to order the sale of real estate of any corporation in the hands of a receiver duly appointed, for the payment of debts and for other purposes, the said court may decree and approve a private sale, if in the opinion of the court, under all the circumstances a better price can be obtained at private than at public sale, as where the interest shall be undivided, or for any other sufficient cause.

"Section 2. At least ten days' notice of the intention to present such petition to the court shall be given by the petitioner to all known creditors and other parties in interest, previous to the presentation of the same to the court."

About five months after the deed was given, a petition to set aside the sale was presented by lien creditors who had no notice of the application to sell at private sale. The property in the meanwhile had been improved and had changed hands several times.

The testimony in the case shows that the price obtained at private sale was more than was offered at public sale and that the price was adequate. It is claimed that an offer to bid $1,100 more than the price received was presented at the argument in the court below, but there is nothing on the record to show this. It was presented, if presented at all, to the court seven months after the final decree, and the advance over the price bid did not equal the sum expended by inno-

cent purchasers in improvements. Instead of being proof
of inadequacy of price, it confirmed the conclusion of
the court that the price bid for the property, when the
sale was had, was adequate. That more could be ob-
tained on a resale by reason of improvements made to
the property by innocent purchasers would hardly appeal
to the conscience of a court of equity.

The power of the court to make the sale is not ques-
tioned. A receiver's sale is, in effect, a sale by execution
process: Mould v. Mould, 28 Pa. Superior Ct. 318;
Green v. Ineson, 43 Pa. Superior Ct. 447.

As regards the rights acquired by a purchaser of
property at a receiver's sale under an order of court
"it is sufficient for him to see that there is a suit in
equity in which the court appointed a receiver of the
property, that such receiver was authorized by the
court to sell; that a sale was made under such au-
thority, that the sale was confirmed by the court and
that the deed accurately recites the property thus sold.
If the title of the property was vested in the receiver by
the court, it would in that case pass to the purchaser.
He is not bound to inquire whether any errors inter-
vened in the action of the court, or irregularities were
committed by the receiver in the sale, any more than a
purchaser under execution upon a judgment is bound to
look into the errors and irregularities of a court on the
trial of the case, or of the officer in enforcing its process.

"If the receiver in the one case, or the sheriff in the
other omit to perform his whole duty, by which the
parties are injured, or commit any fraud upon the court
and the rights of third parties have so far intervened as
to prevent the court from setting the proceedings aside,
the injured parties must seek their remedy personally
against those officers, or on their official bonds." Such
is the law as stated in High on Receiver's (4th ed.),
p. 782, citing Koontz v. Northern Bank, 16 Wallace, 196,
opinion by FIELD, J.

Although we have no Pennsylvania cases referring to

the effect of the giving of a deed by a receiver under order of court, upon irregularities in regard to the sale, we have a number in which the subject is considered in relation to sheriff's deeds. Mere irregularities in a sheriff's sale are cured by the acknowledgment: Crowell v. Meconkey, 5 Pa. 168; Shields v. Miltenberger, 14 Pa. 76; Spragg v. Shriver, 25 Pa. 282; Media T. & T. Co. v. Kelly, 185 Pa. 131.

As was said in Stroble v. Smith, 8 Watts, 281, it is not said in any part of the statute that the omission of a thing requested shall avoid the deed. It may be a reason to reject the acknowledgment; but it would be attended with an alarming degree of insecurity, were the title open to subsequent objection; and, to avoid a mischief so startling, it is necessary to consider the provisions of the section as directory. In the above case the failure consisted in not complying with sec. 97 of the Act of June 16, 1836, P. L. 760, directing and requiring that no acknowledgment of any sheriff's deed should be allowed, unless notice should be first given as provided by said act.

After a sheriff's sale has been confirmed, the purchase money paid, the deed acknowledged, recorded and delivered to the purchaser, and possession of the premises taken by him the court has no power upon a rule to show cause, to set aside the sale and compel the purchaser to deliver up the deed to be canceled. The delivery of said deed by the sheriff after it has been properly acknowledged, the sale confirmed, and purchase money paid, vests the title in the purchaser. It is a good title until it is proved that it was procured by fraud upon defendant in the execution. This must be done either by an action of ejectment or a bill in equity: Evans v. Maury, 112 Pa. 300; Media T. & T. Co. v. Kelly, 185 Pa. 131; Cooper v. Wilson, 96 Pa. 409; Lengert v. Chaninel, 208 Pa. 229; Collins v. Phillips, 236 Pa. 386. In Evans v. Maury, 112 Pa. 300, PAXSON, J., at page 314 says: "But it is a very great stretch of

power, far greater than any chancellor ever exercises, to dispose of such grave questions in a summary manner. We cannot concede the power to any single judge of wresting a man's title from him. . . . We grant the power of the Common Pleas to supervise its process, be it by execution or otherwise, and lay its hand heavily upon any fraud which may occur at any stage of the proceedings. This is true so long as the proceedings are within its grasp. But after they are completed and ended, there must be a time come when the power of the court to interfere summarily for the correction of supposed evils shall cease. When shall that time be? If not with the delivery of the deed, how shall we fix the time?"

Lengert v. Chaninel cited above holds to the doctrine of Evans v. Maury, even after the judgment upon which the sale had taken place was reversed.

In Media T. & T. Co. v. Kelly, 185 Pa. 131, the rule was applied even where the price was grossly inadequate and the advertisement did not comply with the law.

As was said in Abrams v. Sav. and Trust Co., by HENDERSON, J., ante, p. 354, in relation to a sale in the orphans' court, "there was no evidence of the fraud in procuring of the sale, the court has found that the consideration was adequate and that improvements have been made by the purchaser exceeding in value the price of the land. The authority to order a private sale cannot be questioned and as the sale was confirmed by a decree of the orphans' court and made on the application of the guardian of the estate of the minor appointed by that court it is inequitable that an innocent purchaser acting on her faith in the integrity of the decree of the court should be subjected to the loss of her land by a contradictory decree of the same court."

Whilst the facts presented in the above case differ from those before us, we consider the reasoning applies.

We are all of the opinion that the court below committed no error in refusing to set aside the receiver's sale.

Decree affirmed.